643 P.2d 39 (1982)
Melvin CROSS, Petitioner,
v.
The DISTRICT COURT In and For the FIRST JUDICIAL DISTRICT of the State of Colorado, and The Honorable Winston W. Wolvington, one of the Judges thereof, Respondents.
No. 81SA265.
Supreme Court of Colorado, En Banc.
April 5, 1982.
Shelley B. Don, Bruce A. Lampert, Denver, for petitioner.

ORIGINAL PROCEEDING
ROVIRA, Justice.
In this original proceeding, petitioner seeks a writ in the nature of prohibition pursuant to C.A.R. 21. We issued our rule to show cause why the relief prayed for should not be granted. We now make the rule absolute.
The petitioner is the plaintiff, and Al Harger is the defendant in a civil action filed in the District Court in and for the County of Gilpin (79CV25). In that case petitioner alleged that Harger intentionally shot him, and he claimed damages for medical expenses, lost wages, pain and suffering, and exemplary damages.
As a result of the shooting, criminal proceedings were brought against Harger in the same district court (79CR11), and the *40 respondent judge was assigned both the civil and criminal case. Harger retained separate counsel to represent him in the civil and criminal cases.
On July 25, 1980, after a negotiated plea bargain, Harger was to be sentenced in the criminal case. Petitioner's attorney, Shelley B. Don, filed a Motion and Affidavit in that case advising the court that the petitioner had incurred medical expenses of approximately $6,900 as a result of Harger's acts, and pursuant to section 16-11-204.5, C.R.S. 1973 (1981 Supp.),[1] restitution for actual damage should be assessed by the court as a condition of probation. The motion did not refer to the pending civil action. A copy was sent to Harger's criminal defense attorney but not to the attorney representing him in the civil action.
On the day set for sentencing, Harger appeared with his criminal defense attorney; and an associate in the office of petitioner's attorney, Bruce A. Lampert, was also present. During the course of the sentencing hearing, the respondent trial judge inquired as to the effect that restitution would have on the civil action. Lampert made certain statements, more fully discussed later in this opinion, which the respondent trial judge considered to be an agreement to settle the civil case. Harger was placed on probation for five years and ordered to make restitution to the petitioner of $6,900, the amount of his medical expenses.
As a result of the statements made by Lampert, civil defense counsel for Harger, who was not present at the sentencing hearing, claimed that Lampert's statements were a stipulation to settle the civil action even though, within hours after the hearing, Lampert telephoned civil defense counsel and advised him that it was not his intent to settle the civil case and that he had no authority from the petitioner to do so.[2]
Prior to the sentencing hearing, petitioner's attorney had sent interrogatories to Harger. Harger responded to these interrogatories by invoking his Fifth Amendment right against self-incrimination. Subsequent to Harger's plea of guilty and sentencing, petitioner's attorney moved to compel discovery pursuant to C.R.C.P. 37, and a hearing was held on this motion in December 1980.
Harger's civil defense counsel argued that the statement made by the petitioner's attorney at the sentencing hearing was a settlement stipulation; and as long as Harger met the restitution payment schedule, as ordered by the trial court, no further proceedings were warranted in the civil case. He directed the respondent trial judge's attention to the transcript of the July 25 sentencing hearing where the trial judge had asked whether the petitioner would still proceed with the civil action if restitution was ordered, and Lampert had responded by stating that if regular payments of restitution were made, the petitioner would hold the civil case in abeyance and dismiss it with prejudice upon complete payment. He further argued that only in the event Harger failed to make his restitution payments could the civil proceedings be reinstituted and proceed to trial.
Counsel for the petitioner argued that Lampert misspoke at the sentencing hearing when he stated that petitioner was prepared *41 to settle his claim for restitution of medical expenses over a period of five years. He further contended that there was no consideration for any settlement because restitution was mandated by section 16-11-204.5, C.R.S. 1973 (1981 Supp.).
During the course of the argument, the respondent trial judge stated that he didn't do anything to affect the civil case during the sentencing hearing, but there was a possibility that there was an agreement affecting the civil case announced in open court during the sentencing hearing.
The trial court ultimately ruled that Lampert's statement was evidence of an agreement between the parties to hold the civil action in abeyance and to dismiss the case if restitution was successfully completed and that Lampert should be held to his agreement. It thereupon denied petitioner's motion to compel discovery, vacated the trial date, suspended all further proceedings contingent on Harger's making restitution payments, and ordered that the case would be dismissed if restitution was successfully completed.
Petitioner filed a Motion for Review of the Court's Order pursuant to C.R.C.P. 60(b). The motion was denied.
The single issue to be resolved in this case is whether the petitioner is bound by Lampert's statement and whether a valid compromise and settlement had been entered into between the petitioner and Harger which should be enforced.
The record before us reflects that Lampert, prior to appearing at Harger's sentencing hearing, had never met, corresponded, or conversed with the petitioner and had no authority from his employer, Shelley B. Don, or the petitioner to settle petitioner's civil action for payment of medical bills pursuant to the court's order of restitution. While it is true that Lampert made the statements attributed to him, such statements were made without authorization of petitioner and were disclaimed by Lampert within hours in a telephone conversation with Harger's civil defense counsel.
A compromise and settlement is, in effect, a contract to end judicial proceedings. H. W. Houston Constr. Co. v. District Court, Colo., 632 P.2d 563 (1981); Goltl v. Cummings, 152 Colo. 57, 380 P.2d 556 (1963). As we said in Houston, supra, "In order for a settlement to be binding and enforceable, there must be a `meeting of the minds' as to the terms and conditions of the compromise and settlement." H. W. Houston Constr. Co. v. District Court, Colo., 632 P.2d at 565.
In addition, as we have stated on numerous occasions, an attorney does not have the authority to compromise and settle the claim of his client without the knowledge or consent of his client. Radosevich v. Pegues, 133 Colo. 148, 292 P.2d 741 (1956); Lewis v. Vache, 92 Colo. 358, 20 P.2d 554 (1933) (an attorney may not compromise his client's cause without express authority); Hallack v. Loft, 19 Colo. 74, 34 P. 568 (1893); Coon v. Ginsberg, 32 Colo.App. 206, 509 P.2d 1293 (1973). See also Annot., 66 A.L.R. 107 (1930); Annot., 30 A.L.R.2d 944 (1953); 7A C.J.S., Attorney and Client § 214 (1980).
It is also well established that an attorney who is clothed with no other authority than that arising from his employment as attorney has no implied authority by virtue of his general retainer to compromise and settle a claim of his client. Annot., 30 A.L.R.2d 944 at § 2; 7 Am.Jur.2d Attorneys at Law § 156 (1980).
Our examination of the record establishes that there was no precedent special authority running from the petitioner to Lampert to settle or compromise his civil action. Also absent is any evidence of ratification by petitioner. Thus, the prerequisites for settlement are not found in the factual circumstances of the case.
While we do not treat the statements of counsel and the resulting order lightly, in the circumstances before us there are other considerations which we find controlling. In our view, it would be inequitable to enforce an agreement for compromise and settlement which was a mistake on the part *42 of Lampert, and relief can and should be granted in order to prevent manifest injustice.
Further, no prejudice will ensue to Harger because any payments he makes to petitioner, pursuant to the order of restitution, can be credited against recovery, if any, in the civil action. Lastly, the parties will have their day in court for a determination of the controversy on the merits.
The respondent court is ordered to allow civil action 79CV25 to proceed. The rule to show cause is made absolute.
ERICKSON, J., dissents.
ERICKSON, Justice, dissenting.
I respectfully dissent. In my view we improvidently issued a rule to show cause. The bare bones record before us simply does not support our granting a writ of prohibition or mandamus. C.A.R. 21. The record consists of a self-serving petition in the nature of prohibition, an affidavit by Bruce Lampert, and two short transcripts of proceedings in the District Court for Gilpin County. In my opinion, the issues created by counsel for the petitioner are not properly postured for review. If relief is to be granted, it should only be granted after a full hearing in the trial court.
It is undisputed that Shelley B. Don and Bruce A. Lampert filed a civil action against Alan D. Harger on behalf of their client, Melvin Cross, who alleged that he was assaulted by Harger. The petitioner Cross requested that the district court grant probation to Harger in the course of the criminal proceedings which were based on the same facts that were alleged as grounds for relief in the civil assault action. Thereafter, at the sentencing hearing Lampert appeared for Cross and the following statements and agreements were made:
"THE COURT: I am going to allow counsel for the victim to make a statement if he desires.
"MR. LAMPERT: Basically our position is set forth in our motion and affidavit.
"THE COURT: What motion and affidavit?
"MR. LAMPERT: I was informed it was part of the file. It arrived here several days ago.
"THE COURT: I didn't realize that.
"MR. LAMPERT: Yes, Your Honor. Basically what it states is that the Colorado Revised Statutes do provide for restitution as a condition of probation. This has been reenacted in a recent amendment, 16-11-204.5, reaffirming the Legislature's intent restitution be mandatory upon probation.
"The victim really has no position with regard to the disposition of this matter, however, if probation is granted, we would ask the Court to order restitution in accordance with the ability to pay, and we have submitted bills of Mr. Melvin Cross in the amount of $6,906.21 which were incurred as a direct result of the injuries inflicted in this incident.
"THE COURT: What is the victim's position, concerning if this Court ordered restitution on that basis, what would the victim's position be concerning the civil action? Would you still proceed with that?
"MR. LAMPERT: Your Honor, what we would agree to do is hold the civil action in abeyance pending regular payments of restitution. We would be hesitant to dismiss the action, but we would hold it in abeyance.
"THE COURT: With the understanding that 
"MR. LAMPERT: When that amount is paid, it would be dismissed with prejudice.
"THE COURT: Where is it pending?
"MR. LAMPERT: I believe it is in this Court, Your Honor.
"THE COURT: The Clerk informed me it's set for jury trial in October. What would you do about that?
"MR. LAMPERT: Well, if we would have the restitution ordered, we would ask the Court to continue that setting and leave it remain on the docket pending completion of restitution.
"THE COURT: Mr. Marks, do you have any further remarks?

*43 "MR. MARKS: No, Your Honor  yes, Your Honor. My understanding of the situation regarding restitution and the effect it may have upon the pending civil suit is as counsel has indicated. I do not represent Mr. Harger on that case. Mr. Larry Pozner does. However, I have conferred with Mr. Pozner, and he has previously indicated to me that if this matter were resolved upon the basis of restitution that this Court orders, that would be satisfactory to him. I have conferred with Mr. Harger regarding this, and he further indicates that that would be satisfactory."
Thereafter, the court granted probation and ordered that the defendant make restitution by paying $6,906.12 in medical expenses which Cross incurred as a result of the assault by Harger.
The second transcript in the criminal case relates to the effort of the petitioner to go forward with discovery and trial of his civil action against Harger for the injuries he suffered when the assault was committed. It is clear that Lampert agreed to hold the civil action in abeyance during the time the defendant complied with the court's order of restitution. No appearance has been made on behalf of the respondent court and, in my view, we improvidently issued a rule to show cause based upon the allegations and the record made by the petitioner.
This is not the case to establish broad rules which insulate a client from an agreement made by his counsel in open court in an effort to secure benefits for his client. A client is not bound by a settlement agreement made by his lawyer when the lawyer has not been granted express or implied authority by his client to enter into the settlement. Radosevich v. Pegues, 133 Colo. 148, 292 P.2d 741 (1956). See Virginia Concrete Co. v. Board of Supervisors, 197 Va. 821, 91 S.E.2d 415 (1956), Annot. 56 A.L.R.2d 1283, Authority of Attorney to Dismiss or Otherwise Terminate Action. However, a client is bound by his lawyer's agreement as to procedural matters even though the client did not grant authority or agree to the procedure. Thus, in my view, the trial court properly held Cross to the agreement made by his lawyer to hold the case in abeyance until restitution was made in accordance with the probation order even though the client may not have been bound by an agreement on the substantive issue. See Engelhardt v. Bell and Howell Co., 327 F.2d 30 (8th Cir. 1964).
An attorney who enters into an agreement in open court in an effort to secure a favorable ruling for his client, without first obtaining authority from his client, violates his responsibility as an officer of the court and should not be granted relief from his agreement without carrying a heavy burden. Lampert, by entering into the agreement in open court, presumptively had his client's authority to make the agreement. See Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 136 (10th Cir. 1966).
Accordingly, I would remand this case to the trial court for a further hearing to determine whether Lampert had authority to make the agreement as to both the procedural and settlement issues which are before us. See Hawkins v. District Court, Colo., 638 P.2d 1372 (1982).
NOTES
[1] Section 16-11-204.5, C.R.S. 1973 (1981 Supp.), provides in part that: "As a condition of every sentence to probation, the court shall provide that the defendant make restitution to the victim of his conduct for the actual damages which were sustained. Such restitution shall be ordered by the court as a condition of probation. The amount of such restitution shall be based on the actual, pecuniary damages sustained by the victim, the ability of the defendant to pay, and the defendant's obligations to support his dependents and to meet other family obligations...."
[2] The uncontradicted affidavit of Lampert states that he appeared at the sentencing hearing for the limited purpose of requesting that restitution be ordered as a condition of probation; he had no authority from his employer, Shelley B. Don, or the petitioner to settle the civil action; and he advised civil defense counsel by telephone within hours of his return from the sentencing hearing that he did not intend to settle the civil case and had no authority to do so.